PD-1318-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 11/18/2015 1:26:48 PM
Accepted 11/18/2015 3:43:04 PM
ABEL ACOSTA
CLERK

NO. _____

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS AT AUSTIN, TEXAS

---

**STEVEN DELEON,**
Appellant

**v.**

**THE STATE OF TEXAS,**
Appellee

---

## APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

---

**FROM THE THIRD COURT OF APPEALS
AT AUSTIN, TEXAS
CAUSE NUMBER 03-13-00202-CR**

---

**ON APPEAL FROM THE 421ST DISTRICT COURT
OF CALDWELL COUNTY, TEXAS
CAUSE NUMBER 2012-166
HONORABLE TODD BLOMERTH, PRESIDING**

---

**KERRISA CHELKOWSKI**
**The Law Office of Kerrisa Chelkowski**
**1017 South Alamo**
**San Antonio, Texas 78210**
**Telephone: (210) 228-9393**
**Telecopier: (210) 226-7540**
**State Bar No. 24034373**

**ATTORNEY FOR APPELLANT**

**ORAL ARGUMENT REQUESTED**

FILED IN
COURT OF CRIMINAL APPEALS

November 18, 2015

ABEL ACOSTA, CLERK

ii

# IDENTIFICATION OF THE PARTIES

**TRIAL JUDGE:**
Honorable Todd Blomerth, 421st District Court

**FOR THE STATE OF TEXAS:**
Luke Alsobrook – Counsel at Trial
Bar No. 24059374
Katy Alsobrook – Counsel at Trial and on Appeal
Bar No. 24051894
Assistant District Attorneys for Caldwell County
201 E. San Antonio Street
Lockhart, Texas 78644
TELEPHONE: (512) 398-1811

Lisa McMinn – Counsel on Appeal
Bar No. 13803300
State Prosecuting Attorney
P.O. Box 13046
Austin, Texas 78711
TELEPHONE: (512) 463-5724

**APPELLANT/PETITIONER'S COUNSEL:**
Kevin Collins – Counsel at Trial
Bar No. 04625510
600 Navarro, Suite 250
San Antonio, Texas 78205
TELEPHONE: (210) 223-9480

Jeb Lock – Counsel at Trial
Bar No. 24050943
1011 South Alamo
San Antonio, Texas 78210
TELEPHONE: (210) 602-9646

Kerrisa Chelkowski – Counsel on Appeal
Bar No. 24034373
1017 South Alamo
San Antonio, Texas 78210
TELEPHONE: (210) 228-9393

**THIRD COURT OF APPEALS PANEL:**
Chief Justice Jeff Rose – Authored the opinion
Justice Bob Pemberton
Justice Cindy Olson Bourland

# TABLE OF CONTENTS

PAGE(S)

PARTIES TO THE CASE................................................................ii

INDEX OF AUTHORTIES..............................................................v

STATEMENT REGARDING ORAL ARGUMENT.........................vii

STATEMENT OF THE CASE............................................................2

STATEMENT OF PROCEDURAL HISTORY...................................3

GROUND FOR REVIEW.................................................................3

ARGUMENT AND AUTHORITIES...................................................4

PRAYER.........................................................................................12

CERTIFICATE OF SERVICE........................................................13

CERTIFICATE OF COMPLIANCE................................................14

APPENDIX.....................................................................................15

# INDEX OF AUTHORITIES

**PAGE(S)**

## CASES

*Abbott v. State,*
        196 S.W.3d 334 (Tex. App.—Waco 2006, pet. ref'd)...........................8

*Archie v. State,*
        340 S.W.3d 734 (Tex. Crim. App. 2011)........................................8

*Bustamante v. State,*
        48 S.W.3d 761 (Tex. Crim. App. 2001).........................................6

*Dickinson v. State,*
        685 S.W.2d 320 (Tex. Crim. App. 1984).......................................9

*Eastep v. State,*
        919 S.W.2d 151 (Tex. App.-Dallas 1996).....................................10

*Flores v. State,*
        194 S.W.3d 34 (Tex. App. Texarkana 2006)....................................7

*Garrett v. State,*
        632 S.W.2d 350 (Tex. Crim. App. 1982)........................................9

*Guidry v. State,*
        9 S.W.3d 133 (Tex. Crim. App. 1999)..........................................4

*Johnson v. State,*
        611 S.W.2d 649 (Tex. Crim. App. 1981).......................................10

*Ladd v. State,*
        3 S.W.3d 547 (Tex. Crim. App. 1999)..........................................6

*Mosley v. State,*
        983 S.W.2d 249 (Tex. Crim. App. 1998)......................................7, 8

*Owen v. State,*
        656 S.W.2d 458 (Tex. Crim. App. 1983)......................................9, 10

*Patrick v. State,*
 906 S.W.2d 481 (Tex. Crim. App. 1995)..........................................10

*Pollard v. State,*
 552 S.W.2d 475 (Tex. Crim. App. 1977)............................................6

*Riney v. State,*
 28 S.W.3d 561 (Tex. Crim. App. 2000)...........................................10

*Silva v. State,*
 989 S.W.2d 64 (Tex. App. San Antonio 1998)......................................6

*Simpson v. State,*
 119 S.W.3d 262 (Tex. Crim. App. 2003)............................................6

*Smith v. State,*
 65 S.W.3d 332 (Tex. App.—Waco 2001, no pet.)....................................4

*Wesbrook v. State,*
 29 S.W.3d 103 (Tex. Crim. App. 2000).............................................8

*Wood v. State,*
 18 S.W.3d 642 (Tex. Crim. App. 2000).............................................6

## RULES & STATUTES

TEX. R. APP. PRO. 38.............................................................4, 9

TEX. R. APP. P. 44.2(a)............................................................7

## STATEMENT REGARDING ORAL ARGUMENT

Appellant believes and respectfully suggests to this Court that the important issues raised in this petition are worthy of oral argument. Appellant believes that presentation of oral argument in this case will assist this Court in understanding the effects of the Third Court of Appeals' opinion on the lower courts which are bound to follow its law. Therefore, for the above reasons he respectfully requests oral argument.

NO. _____

# IN THE COURT OF CRIMINAL APPEALS
## OF TEXAS AT AUSTIN, TEXAS

STEVEN DELEON,
Appellant

v.

THE STATE OF TEXAS,
Appellee

## APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

### FROM THE THIRD COURT OF APPEALS
### AT AUSTIN, TEXAS
### CAUSE NUMBER 03-13-00202-CR

### ON APPEAL FROM THE 421ST DISTRICT COURT
### OF CALDWELL COUNTY, TEXAS
### CAUSE NUMBER 2012-166
### HONORABLE TODD BLOMERTH, PRESIDING

**TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:**

NOW COMES, Steven DeLeon, Appellant in this cause, by and through his attorney of record, Kerrisa Chelkowski, and pursuant to the provisions of TEX. R. APP. PRO. 66, *et seq.*, moves this Court to grant discretionary review, and in support shows the following:

1

## STATEMENT OF THE CASE

Appellant, Steven DeLeon, was charged by indictment of one count of Continuous Sexual Abuse of A Child, and two counts of Aggravated Sexual Assault of a Child, each count a First Degree Felony, in Cause Number 2012-166. CR1: 9-10.[1] Trial before a jury was held in the 421st District Court of Caldwell County, Texas, the Honorable Todd Blomerth Presiding. RR1: 1. DeLeon pled "Not Guilty" to the allegations on February 20th, 2013 and the jury returned with its verdict on February 25th, 2013. RR7: 68. DeLeon was found "guilty" of the single count of Continuous Sexual Abuse of a Child. RR7: 68.

The jury sentenced DeLeon to 32 years imprisonment. RR7: 128. DeLeon filed a timely Notice of Appeal on March 18, 2013. CR2: 707. Petitioner complained on appeal, among other issues, that the trial court erred when it denied his Motion for Mistrial after he objected to the prosecution's improper comment on his failure to testify. This Petition challenges the Third Court of Appeals ruling on

---

[1] Appellant uses the following abbreviations to refer to the record in this case:

    a.  CRVol#: page # refers to the Clerk's record containing the evidence, documents, motions and pleadings of the parties, judgment, orders, etc. of the court. Supp. refers to the Supplemental Clerk's Record.

    b.  RRVol.#: page# refers to the volumes prepared by the Court Reporters in connection with Appellant's pretrial hearings, voir dire, trial, sentencing, etc. MNT refers to the record on the hearing for the Motion for New Trial.

    c.  See App.Br.SOF: ___ refers to the Statement of Facts section of Appellant's Brief.

2

whether trial court abused its discretion when it denied Petitioner's Motion for Mistrial.

## STATEMENT OF PROCEDURAL HISTORY

On May 29, 2015, the Third Court of Appeals issued an unpublished opinion affirming the trial court's decision attached in the Appendix. *DeLeon v. State*, No. 03-13-00202-CR, (Tex. App.—Austin, May 29, 2015). The appellate court found that the trial court did not abuse its discretion when it denied Petitioner's Motion for Mistrial after he objected to the prosecution's improper comment on his failure to testify, and further denied Petitioner's remaining points of error.

On September 17, 2015, the Third Court of Appeals overruled Appellant's Motion for Rehearing. After this Honorable Court granted Appellant's Motion for Extension of Time to File the Petition for Discretionary Review, Appellant's Petition is timely filed on November 18, 2015.

## GROUND FOR REVIEW

SOLE ISSUE: The Third Court of Appeals erred in finding the trial court did not abuse its discretion when it denied Petitioner's Motion for Mistrial after the prosecution improperly commented on Petitioner's failure to testify.

3

## ARGUMENT AND AUTHORITIES

Jury argument is limited to: (1) summations of the evidence; (2) reasonable deductions from the evidence; (3) answers to argument of opposing counsel; and (4) a plea for law enforcement. *Guidry v. State*, 9 S.W.3d 133, 154 (Tex. Crim. App. 1999). "A comment on an accused's failure to testify violates the accused's state and federal constitutional privileges against self-incrimination." *Smith v. State*, 65 S.W.3d 332, 339 (Tex. App.—Waco 2001, no pet.); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.08 (Vernon 2005).

At the sentencing phase of the trial, during the state's closing argument, the prosecutor stated to the jury:

> "Mr. Alsobrook: And if the Defendant had taken the stand, admitted what he had done, and begged for forgiveness, I believe the minimum sentence would be appropriate. But that's not what we have here.
>
> Mr. Collins: Your honor, could we approach the bench?
>
> (Bench Conference)
>
> Mr. Collins: I am going to ask for a mistrial. He did not testify at punishment. He just said to the jury, if he got up on the stand at this phase and told you –
>
> Mr. Alsobrook: I was specifically referring to guilt/innocence.
>
> Mr. Collins: He didn't say that. He said, if he got up here and asked for forgiveness – this --- I'm asking for a mistrial, Judge.
>
> The Court: Well, you're not going to get one. I am going to instruct the jury to disregard that.
>
> Mr. Collins: That's unbelievable.

4

(Open Court.)

The Court: Ladies and gentlemen, the last comment by the prosecutor is improper, and you will not consider that for any purpose whatsoever.

Mr. Collins: Your honor, is that a ruling on the mistrial, as well?

The Court: Denied." RR7: 124-125.

This was a blatant and intentional comment on DeLeon's failure to testify. To construe it as anything else would be outrageous. During the guilt/innocence stage of the trial DeLeon's took the stand to testify. However, DeLeon did not testify during the punishment phase. Even if the state tried to argue that it was referring to his trial testimony, which it clearly was not, would be more absurd. No defendant would take the stand during guilt/innocence and profess their guilt and take responsibility for the crime he is accused of. That would completely vacate the purpose of pleading "not guilty" and letting a judge or jury decide on the verdict. The only time a defendant might take the stand and profess his guilt and apologize is during the sentencing phase of the trial and even that is improbable, as it would vacate any positive result on appeal. The state clearly commented on DeLeon's right to remain silent thereby violating his Fifth Amendment right.

The Third Court of Appeals relied on this Court's direction when reviewing the denial of a motion for mistrial and reviewed under an abuse of discretion standard. As this Court has ruled, the denial of a motion for mistrial, which is appropriate for "highly prejudicial and incurable errors," is reviewed under an

5

abuse of discretion standard. *See Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003) (quoting *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000)); *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999).

Over thirty years ago in *Pollard v. State*, 552 S.W.2d 475 (Tex. Crim. App. 1977) this Honorable Court held that where (Pollard) was the only person who could refute the complainant's testimony; the prosecutor's reference to the complainant's testimony as uncontroverted was a comment on (Pollard's) failure to testify. The same reasoning applies here because Appellant was the only person who could have testified and apologized to the jury, which in effect would be a admission of guilt, in answer to the prosecutor's comments to the jury.

A prosecutor cannot comment on a defendant's failure to testify because such a comment violates the privilege against self-incrimination and the freedom from compulsion to testify contained in the Fifth Amendment of the United States Constitution and Article I, section 10, of the Texas Constitution. *Bustamante v. State*, 48 S.W.3d 761, 764 (Tex. Crim. App. 2001). A prosecutor's statement constitutes a direct comment on a defendant's failure to testify if it references evidence that only the defendant can supply. *Silva v. State*, 989 S.W.2d 64 (Tex. App. San Antonio 1998). The prosecution knew that an apology from DeLeon would be a de facto admission of guilt.

Because commenting on a defendant's failure to testify violates both the

6

U.S. Constitution and the Texas Constitution this error is constitutional error under Texas Rule of Appellate Procedure (T.R.A.P.) Rule 44.2. Constitutional error, within the context of T.R.A.P. Rule 44.2 (a), is "an error that directly offends the United States Constitution or the Texas Constitution without regard to any statute or rule that might also apply." *Flores v. State*, 194 S.W.3d 34 (Tex. App. Texarkana 2006). Rule 44.2(a) provides: "If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment."

The question of whether a mistrial should have been granted involves most, if not all, of the same considerations that attend a harm analysis. A mistrial is the trial court's remedy for improper conduct that is "so prejudicial that expenditure of further time and expense would be wasteful and futile." In effect, the trial court conducts an appellate function: determining whether improper conduct is so harmful that the case must be redone. Of course, the harm analysis is conducted in light of the trial court's curative instruction. Therefore, the appropriate test for evaluating whether the trial court abused its discretion in overruling a motion for mistrial is a version of the test originally set out in *Mosley v. State*, 983 S.W.2d 249, 259-60 (Tex. Crim. App. 1998), a harm analysis case.

7

The *Mosley* factors that the appellate court must consider in determining whether the trial court abused its discretion in denying a mistrial during the punishment phase are: (1) the prejudicial effect, (2) curative measures, and (3) the likelihood of the same punishment being assessed. *See Mosley*, 983 S.W.2d at 259; *see Abbott v. State*, 196 S.W.3d 334, 347 (Tex. App.—Waco 2006, pet. ref'd). Considering the *Mosley* factors, the trial court abused its discretion in denying the motion for mistrial and the appellate court further erred in affirming the decision to deny the motion. The prejudicial effect of the prosecutor's remark was incurable because the comment was direct and flagrantly improper. The trial court's instruction to disregard was an insufficient curative measure in this instance. *See Wesbrook v. State*, 29 S.W.3d 103, 115-16 (Tex. Crim. App. 2000); *see also Archie v. State*, 340 S.W.3d 734, 741 (Tex. Crim. App. 2011).

Finally, DeLeon was facing a sentence of a minimum of 25 years in prison with no possibility of parole. Punishment evidence included only of numerous witnesses discussing DeLeon's good nature, professional demeanor, and appropriate interaction with his students. The State did not put on any punishment evidence or witnesses. Their entire case at punishment relied on their jury argument. The likelihood of the same punishment being assessed without the State's comment is very low.

The trial court erred in denying his motion for mistrial after the prosecution

commented on Petitioner's failure to testify. The Texas Code of Criminal Procedure states that the failure of a defendant to testify "shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by counsel." TEX. CODE. CRIM. PROC. art 38.08. The test of whether closing remarks are proper is whether the language was such that a jury would naturally and necessarily take it to be a comment on the accused's failure to testify. *Garrett v. State*, 632 S.W.2d 350 (Tex. Crim. App. 1982).

The facts of this case mirror those of *Owen v. State*, 656 S.W.2d 458, 459 (Tex. Crim. App. 1983). In *Owen*, the prosecution commented that the Appellant had the opportunity, during the punishment phase, to take the stand and say he was sorry, but that he did not do it. The prosecutor went on to say that the jury should not assess probation as punishment where the defendant had not apologized for what happened. This Court stated that if the remark complained of called the jury's attention to the absence of evidence, which only the testimony from the appellant could supply, the conviction must be reversed. The remarks that the defendant failed to apologize during the punishment phase were said to be direct references to what the jury had not heard the appellant say.

Similarly, in *Dickinson v. State*, 685 S.W.2d 320, 322 (Tex. Crim. App. 1984), the court found it was error to deny a mistrial where the prosecutor stated, during the punishment phase, that appellant had failed to express any remorse,

9

shame or pity toward his victim.

In the present case, as in *Owen*, the prosecutor's comments: "And if the defendant had taken the stand, admitted what he had done, and begged for forgiveness, I believe the minimum sentence would be appropriate. But that's not what we have here," can only be construed as a reference to DeLeon's failure to testify at the punishment phase because that was the only time in which it would have been somewhat logical and/or relevant for him to express remorse after he pled not guilty. The prohibition against a comment on the defendant's failure to testify is mandatory and adverse effects of any references are not usually cured by an instruction to the jury to disregard. *Johnson v. State*, 611 S.W.2d 649 (Tex. Crim. App. 1981).

To constitute a comment on the defendant's failure to testify, it is insufficient that the jury might have inferred the prosecutor alluded to the failure to testify; the language used must make the inference necessary. *Eastep v. State*, 919 S.W.2d 151, 154 (Tex. App.-Dallas 1996), *aff'd on other grounds*, 941 S.W.2d 130 (Tex. Crim. App. 1997), *overruled by Riney v. State*, 28 S.W.3d 561 (Tex. Crim. App. 2000). A comment that calls the jury's attention to the absence of evidence, which only the defendant can supply, is reversible. *Patrick v. State*, 906 S.W.2d 481, 491 (Tex. Crim. App. 1995).

# CONCLUSION

It is necessary for this Court to provide guidance and direction to the lower courts to ensure that further defendant's constitutional rights are not violated when the prosecution commits improper argument. The lower courts need this guidance and direction on ruling on motions for mistrial when a defendant's constitutional rights have been violated. The trial court erred in denying DeLeon's motion for mistrial after the prosecution commented on DeLeon's failure to testify. Further, the Third Court of Appeals erred in finding that the trial court did not abuse its discretion in denying the Motion for Mistrial. DeLeon's constitutional rights were blatantly violated. Lastly, guidance by this Court will also ensure that prosecutors across Texas are not violating defendant's constitutional rights during jury argument and to ensure the right to a fair trial.

# PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Steven DeLeon, Petitioner respectfully requests this Court grant this Petition for Discretionary Review, reverse the Third Court of Appeals' opinion affirming the conviction and remand Petitioner's case for a new trial.

Respectfully submitted,

Law Office of Kerrisa Chelkowski
1017 South Alamo
San Antonio, Texas 78210
Telephone: (210) 228-9393
Telecopier: (210) 226-7540
Email: kerrisa@defendtexas.com

By: __/s/ Kerrisa Chelkowski___
KERRISA CHELKOWSKI
State Bar No: 24034373

ATTORNEY FOR PETITIONER:
STEVEN DELEON

12

# CERTIFICATE OF SERVICE

I, Kerrisa Chelkowski, do hereby certify that a true and correct copy of this foregoing document was sent via certified mail to the Caldwell County District Attorney's Office at 201 E. San Antonio Street, P.O. Box 869, Lockhart, Texas 78644 and to the State Prosecuting Attorney located at P.O. Box 13046 Austin, Texas 78711-3046 on this the 18TH day of November, 2015.

/s/ Kerrisa Chelkowski
KERRISA CHELKOWSKI

## CERTIFICATE OF COMPLIANCE

Pursuant to the Texas Rules of Appellate Procedure (TRAP) 9.4(i)(3), the undersigned certifies this brief complies with the type-volume limitations or TRAP 9.4(i)(3)

1. EXCLUSIVE OF THE EXEMPTED PORTIONS IN TRAP 9.4(i)(3), THE BRIEF CONTAINS (select one):

    A.      3,005 words, OR

    B.      ____ lines of text in monospaced typeface.

2. THE BRIEF HAS BEEN PREPARED (select one):

    A. in proportionally spaced typeface using:

Software Name and Version:  Microsoft Office Word 2011
in (Typeface Name and Font Size):  14 pt. Times New Roman, or

    B. in monospaced (nonproportianally spaced) typeface using:

Typeface name and number of characters per inch:

3.    THE UNDERSIGNED UNDERSTANDS A MATERIAL MISREPRESENTATION IN COMPLETING THIS CERTIFICATE, OR CIRCUMVENTION OF THE TYPE-VOLUME LIMITS IN TRAP 9.4(i)(3), MAY RESULT IN THE COURT'S STRIKING THE BRIEF AND IMPOSING SANCTIONS AGAINST THE PERSON SIGNING THE BRIEF.

                        _/s/ Kerrisa Chelkowski____
                        Signature of Filing Party

# APPENDIX

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00202-CR

### Steven DeLeon, Appellant

### v.

### The State of Texas, Appellee

---

### FROM THE DISTRICT COURT OF CALDWELL COUNTY, 421ST JUDICIAL DISTRICT NO. 2012-166, HONORABLE TODD A. BLOMERTH, JUDGE PRESIDING

---

## MEMORANDUM OPINION

A jury found appellant Steven DeLeon guilty of continuous sexual abuse of a young child and assessed punishment at thirty-two years in prison. DeLeon contends that insufficient evidence supports the judgment and that the trial court abused its discretion and violated the constitution by refusing to allow him to make a defense and fully confront witnesses against him. He also contends that the trial court abused its discretion by denying his motion for mistrial when the prosecutor commented on his exercise of his right to remain silent and by imposing a sentence without the possibility of parole. We will affirm the judgment.

## BACKGROUND

DeLeon taught physical education at the elementary school M.G. attended. He met M.G. and her mother, D.A., in January 2010 when M.G. started playing on the school's fourth-grade basketball team. M.G. played basketball through the summer of 2011, and DeLeon spent time with D.A.'s family. The adults went on one date and never became romantically linked, though there was

testimony that D.A. wanted more than a friendship. DeLeon testified that he helped D.A. with her finances, helped her start a checking account, and counseled her about her relationship with her son, D.G., who DeLeon also taught. DeLeon attended a parent-teacher conference regarding D.G. in place of D.A., helped M.G. with homework, and stayed with the children, sometimes overnight. The children stayed with DeLeon and his brother overnight once. M.G. testified that it was during such stays that DeLeon assaulted her in the summer of 2011.

M.G. first reported an assault in May 2012 after her mother found a recording of a March 19, 2012 telephone conversation between M.G. and DeLeon. The conversation began with a discussion of M.G.'s grandfather's surgery, but veered into sex-related topics. DeLeon deemed the shift in topics inappropriate and said that M.G. was responsible for the shift, but he admitted that he participated in the inappropriate discussions. In a discussion prompted by M.G.'s query of why DeLeon seemed uncomfortable whenever female body parts were discussed, DeLeon said, "It's kind of like with you like I remember like I would tell you: Well, am I hurting you? Or you know is everything okay? I just want to make sure that you're like comfortable." DeLeon testified that this statement referred to a basketball practice during which he had unknowingly hurt M.G. by inadvertently touching her breast and she had been embarrassed to explain her pain in front of the other players. The conversation also spanned other topics ranging from the inappropriateness of physical violence in a relationship to M.G. getting whistled at in a store to the size of DeLeon's girlfriend's vagina. D.A. made a copy of the recording and took it to school officials, leading to the police investigation and this prosecution.

M.G. testified at trial that DeLeon assaulted her four times during the summer of 2011—three times at her home and once at his. She testified that one time he lay on top of her with

2

his clothes on. M.G. said that another time he touched the outside of her private parts with his finger. She testified that DeLeon asked if she was okay or if he was hurting her. She said that, after this incident, she requested a different babysitter, but her mother still chose DeLeon. She testified that when she and her brother stayed overnight at DeLeon's house, DeLeon touched her private parts while her brother slept next to them. In the final incident, she testified that she and DeLeon were in her mother's room talking when DeLeon pulled his pants down and told her to touch his penis. She said that she touched it briefly and that he then grabbed her hand, put it onto his penis, and moved their hands up and down on his penis while he grunted. She testified that, after five minutes, something gooey came out of his penis.

M.G. conceded at trial that she had related different versions of these assaults at different times to different audiences. M.G. told her mother that DeLeon assaulted her once, told a child advocate about three instances, and testified about four instances. At trial, she recanted her allegation to the child advocate that DeLeon had touched the inside of her vagina. She testified that the touching hurt but had told the child advocate that it had not hurt. At trial, she rejected her report that one of the incidents occurred during the day, insisting that it occurred at night. M.G. told a child advocate that the phone recorded the March 19 phone conversation without her knowledge, but she recanted that assertion at trial and explained the steps needed to make a recording. M.G. acknowledged at trial that she was sometimes perceived as "overly dramatic."

DeLeon argued that the allegations of assault were unfounded. He denied that he touched M.G.'s sexual organ and that she touched his. He denied being unclothed around the children and denied sleeping in a bed with them. DeLeon testified that his relationship with D.A. and her family changed in the fall of 2011 when she began dating a man whom DeLeon described

3

as extremely jealous. D.A. changed M.G.'s phone number—M.G. linked the change to D.A.'s new boyfriend, but D.A. testified it was because DeLeon yelled at M.G. on the phone after she did not invite him to her holiday band concert in December 2011. M.G. testified that she surreptitiously stored his number in her new phone under the name "William." DeLeon testified that he decided not to communicate with the family beginning in December 2011. In February 2012, D.A. contacted him after he sent a flyer to students at his school (including D.G.) regarding an event in Austin. DeLeon testified that D.A. called to tell him that M.G. (who was now attending a different school for sixth graders) wanted to attend.

DeLeon testified that D.A. used inappropriate language around the children when talking about topics including her ex-husbands and ex-boyfriends. He testified that M.G. picked up the language from her mother. He acknowledged that he fell into similar patterns when around the family, including during the recorded March 19 telephone conversation.

DeLeon's brother, who has lived with DeLeon for almost fifteen years, testified that he never heard DeLeon express a sexual interest in children. DeLeon's brother testified that they watched television together the night that M.G. said DeLeon assaulted her at the brothers' home. He testified that DeLeon slept on the couch that night. DeLeon's brother also testified that the home is 1,300 square feet, that the bedroom doors had been removed during a remodel, and that the interior of the bedrooms was visible from the living room.

A student, a parent of a student, and two fellow teachers testified about DeLeon. The student testified that she liked him, found him truthful, and never had any problems with him. The parent testified that she and her daughter loved DeLeon and that he loved the kids, was truthful, and was a mentor. One fellow teacher described him as truthful, while another testified that she did not

4

like him because he was not prompt. She testified that she told DeLeon she thought he acted too familiar with all the girls on the team and that he should not be alone with any of the girls because it looked inappropriate, but said that she did not see him pay any extra attention to M.G. The teacher testified that she found M.G. to be truthful.

At the punishment phase, DeLeon's friends, colleagues, and family testified in support of DeLeon. They described him as a good teacher and a good person who was supportive and appropriate with children. A psychologist evaluated DeLeon and testified that the test results showed no sexual deviancy, that he is quite conservative in his sexual practices, that he showed no sexual interest in children, and that he scored very low on a scale of potential recidivism.

## DISCUSSION

DeLeon raises four issues on appeal. He contends that the court improperly limited his ability to confront witnesses and put on a defense. He argues that the evidence is insufficient to prove all of the required elements. He contends that the trial court erred by denying his motion for mistrial based on the prosecution's comment on his failure to testify. DeLeon also asserts that the sentence was unconstitutional because it is disproportionate and cruel and unusual.

**DeLeon was not harmed by any error in the exclusion of evidence.**

DeLeon contends that the trial court abused its discretion and violated his right to confront witnesses when it prevented him from cross-examining D.A. about problems she had with Child Protective Services, in particular D.A.'s report to DeLeon that she had abused her son. DeLeon also contends that the trial court improperly refused to allow him to question D.A. regarding her anger after he ignored her romantic advances toward him. He contends that this evidence

5

would have shown that D.A.'s report of his alleged abuse was a tactic to divert attention from her abuse of her children.

The Constitution guarantees defendants a meaningful opportunity to present a complete defense. *Crane v. Kentucky*, 476 U.S. 683, 690 (1986); *see also* U.S. Const. amends. VI (compulsory process and confrontation of witnesses) & XIV (due process). There is, however, no absolute constitutional right to present favorable evidence. *Potier v. State*, 68 S.W.3d 657, 659 (Tex. Crim. App. 2002) (citing *United States v. Scheffer*, 523 U.S. 303, 316 (1998)). The right to present relevant evidence is subject to reasonable restrictions through evidentiary rules that are not arbitrary or disproportionate to the rule's purpose. *Id.*; *see also Davis v. State*, 313 S.W.3d 317, 329 n.26 (Tex. Crim. App. 2010). The improper exclusion of evidence may establish a constitutional violation (1) when a state evidentiary rule categorically and arbitrarily prohibits the defendant from offering relevant evidence that is vital to his defense; or (2) when a trial court precludes the defendant from presenting a defense by erroneously excluding relevant evidence that is a vital portion of the case. *Ray v. State*, 178 S.W.3d 833, 835 (Tex. Crim. App. 2005). The exclusion of evidence is unconstitutional only where it infringes on a weighty interest of the accused. *Potier*, 68 S.W.3d at 660 (citing *Scheffer*, 523 U.S. at 308). Erroneous evidentiary rulings rarely rise to the level of denying the fundamental constitutional rights to present a meaningful defense. *Id.* at 663.

The courts' exercise of discretion is guided by competing interests. Courts should permit great latitude for the accused to show any fact that would tend to establish ill-feeling, bias, motive and animus upon the part of any witness testifying against him. *Koehler v. State*, 679 S.W.2d 6, 9 (Tex. Crim. App. 1984). On the other hand, the trial judge retains wide latitude to impose reasonable limits on cross-examination to show bias based on concerns about, among other things,

6

harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant. *Irby v. State*, 327 S.W.3d 138, 145 (Tex. Crim. App. 2010).

The parties at trial entered an agreed order in limine concerning the mention of prior contact between any of the witnesses and Child Protective Services. During his cross-examination of D.A., DeLeon notified the court that he intended to ask questions regarding CPS involvement with D.A.'s family, which prompted the following exchange:

> [Defense counsel]: . . . . There is direct relations to this discipline going on that ties to a very important defensive theory that this discipline made the child scared of her mother.
>
> THE COURT: You haven't shown anything yet, Counsel, so I am not going to let anything like that in, unless you show something that has some bearing on the case.
>
> [Defense counsel]: Well, then—okay, a later time then. Okay. So that's fine.

During DeLeon's testimony, the State objected when he mentioned that the children had been "returned from CPS custody," and the court cautioned the witness not to blurt out CPS references. Later, DeLeon agreed with a question that after a conversation with D.A. he felt compelled to do something—specifically, "as an educator, it was my obligation to contact CPS to let them know—" at which time the State again objected and invoked the motion in limine. The following exchange occurred during a bench conference:

> [Defense counsel]: This is different, Judge. This goes to her motive in filing the case. This is not talking about something that happened in the past. This is talking about directly what her motive would be when this case was started.
>
> [Prosecutor]: So wouldn't the appropriate person to be—have gone into that been with her?
>
> [Defense counsel]: This is my case. You can recall her.

7

[Prosecutor]: This witness can't testify about her motive.

[Defense counsel]: He can testify about what happened, not her motive. I can argue it, based on the evidence.

THE COURT: I'm sustaining the objection at this time. You can call the appropriate person to do it.

DeLeon did not recall D.A. for further interrogation, but after the close of evidence, his attorney made the following offer of proof:

We attempted to ask questions before the jury concerning whether [D.A.] had informed my client, Steven DeLeon, of child abuse that she had inflicted upon her son, [D.G.]. And that would have given her a direct motive to go into the place with a recording [of the phone conversation between M.G. and DeLeon]. It happened shortly before the recording was—excuse me—shortly before the recording was discovered. And that would have prompted her to go to the authorities with that and given her motive. And we were not allowed to ask those questions.

It is not entirely clear that DeLeon preserved this issue for appellate review. To preserve error in the admission of evidence, a party generally must make a complaint to the trial court with sufficient specificity that the trial court is aware of the complaint, and the court must rule on the request. Tex. R. App. P. 33.1(a). In order for a defendant to perfect a complaint that he was not allowed to inquire regarding a witness or party's bias, he must establish what subject matter he desired to examine the witness about during the cross-examination. *Koehler*, 679 S.W.2d at 9. DeLeon has not shown that he was totally forbidden from making the inquiries. The trial court stopped him from asking D.A. about CPS until he "show[ed] something that has some bearing on the case." When the State objected to defense counsel's attempt to ask DeLeon about D.A.'s motive for contacting law enforcement, the trial court sustained the objection "at this time," adding this

8

directive to counsel: "You can call the appropriate person to do it." DeLeon did not recall D.A. or any other witness on the subject.

Even if DeLeon's offer of proof is sufficient to preserve the issue regarding CPS's investigation into a report of abuse, DeLeon has not demonstrated that the trial court erred. There is no showing that evidence relating to D.A.'s abuse of D.G. had any relevance on any element of whether DeLeon sexually assaulted M.G. It can therefore be excluded absent some other theory of admissibility. *See* Tex. R. Evid. 402. Whether D.A. abused her son is not admissible impeachment evidence about her character for truthfulness and is not evidence of conviction for a crime. *See* Tex. R. Evid. 608(a), 609. It is a specific instance of conduct which "may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence." *See id.* 608(b). Also, the relevance to bias or motivation for D.A. reporting the recording of the phone conversation between M.G. and DeLeon is not plainly apparent. If, as DeLeon argues, D.A. wanted to distract CPS from the report that she abused her son, it is not clear that she would serve that purpose by reporting that her daughter was sexually abused by a man D.A. repeatedly selected as a babysitter despite her daughter's request that she not do so. Further, because there is no challenge to the validity of the recorded phone conversation, D.A.'s motive or bias in supplying it to law enforcement is at best marginally relevant to the contested issues in this case. *See Irby*, 327 S.W.3d at 145 (trial court can limit marginally relevant interrogation). The content of the conversation matters much more. On the record presented, the trial court did not err by excluding evidence of D.A.'s involvement with CPS and did not prevent DeLeon from presenting a defense.

Harm from any wrongful exclusion of this evidence is also not apparent. The recording was not made in retaliation for D.A.'s admission of abuse. The conversation occurred on

9

March 19, 2012, and D.A. made the abuse admission to DeLeon "shortly before" she discovered the recording on M.G.'s phone on May 20, 2012. DeLeon does not dispute that he made the recorded statement, and although M.G. may have introduced the topic of DeLeon's discomfort with discussion of female body parts, he initiated the discussion of unspecified events with M.G. when he wanted to ensure that she was comfortable and that he was not hurting her. The trial court's failure to allow DeLeon to delve into D.A.'s potential motivations for disclosing this recording to law enforcement did not affect the jury's consideration of the substance of the phone call.

Further diminishing any harm, DeLeon was able to challenge D.A.'s and M.G.'s credibility in other ways. DeLeon testified and flatly denied that the assaults occurred. He presented evidence that D.A. was biased against him because she was angered by his rejection of her romantic overtures. He queried M.G. who said that D.A. had a "crush" on DeLeon and that he did not like her mother in that way. DeLeon's brother testified that D.A. was obsessed with DeLeon and that his brother did not return her affection. He testified that D.A. would show up at the brothers' house unannounced while they were out and would wash their dishes and feed their dog. DeLeon himself testified that D.A. wanted to marry him but that, while he was interested in helping her children, he was not interested in marriage with her. All this testimony called into question D.A.'s credibility because she testified that she and DeLeon went on a date but decided that they were better off as friends. Further, although D.A. asserted that she did not telephone DeLeon, he confronted her with records showing that 570 calls went from her phone to his. He confronted M.G. about the different stories of abuse she told to different questioners. He highlighted the fact that she reported one, then three, then four incidents, and noted inconsistencies between versions as to whether the contact hurt, where her brother was during an incident, and whether the assault occurred during the day or night.

10

Further, DeLeon's brother contradicted details of M.G.'s story about the assault at the brothers' house. The trial court's failure to allow him to obtain the testimony he wanted about D.A.'s alleged abuse of her son did not prevent him from confronting witnesses and challenging their credibility. We conclude beyond a reasonable doubt that any erroneous exclusion of evidence discussed above did not contribute to DeLeon's conviction or punishment. *See* Tex. R. App. P. 44.2(a).

**The evidence is sufficient to support the conviction.**

In reviewing the sufficiency of the evidence to support a conviction, we determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). In making this determination, we consider all evidence that the trier of fact was permitted to consider, regardless of whether it was rightly or wrongly admitted. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Allen v. State*, 249 S.W.3d 680, 688-89 (Tex. App.—Austin 2008, no pet.). We view this evidence in the light most favorable to the verdict. *Clayton*, 235 S.W.3d at 778. The jury, as the trier of fact, is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Id*. Therefore, we presume that the jury resolved any conflicting inferences and issues of credibility in favor of the judgment. *Id*.

A person commits continuous sexual abuse of a child if, while the person is 17 years of age or older and the victim is a child younger than fourteen years, the person commits two or more acts of sexual abuse during a period that is 30 or more days in duration. Tex. Penal Code § 21.02(b). Acts of sexual abuse include indecency with a child if the person committed the offense in a manner other than by touching the child's breast, *id*. § 21.11(a)(1), sexual assault, *id*. § 22.011, and aggravated sexual assault, *id*. § 22.011.

11

M.G.'s testimony is sufficient to support the conviction. It is undisputed that DeLeon and M.G. were, respectively, thirty-nine and twelve years old during the summer of 2011. M.G. testified that around June 3, 2011, DeLeon touched her vagina. She testified that they were lying on the floor, he asked her to remove her shorts, and he moved his fingers on her vagina. She testified that, after he touched her for about five minutes, he kissed her neck really hard and left a mark. She said he asked if she was okay or if he was hurting her. This testimony supports a finding that DeLeon committed indecency with a child by contact. *See id.* § 21.11(a)(1). M.G. testified that, about a month later—longer than thirty days, she said—when she and her brother were staying overnight at DeLeon's house, DeLeon touched her vagina. She testified that, while they were lying on his bed, he asked her to remove her shorts and underwear, and he moved his finger around and inside her vagina for about five minutes. He again asked her if he was hurting her. This testimony supports a finding of indecency with a child by contact, sexual assault of a child, and aggravated sexual assault of a child. *See id.* §§ 21.11(a)(1), 22.011(a)(2), 22.021(a)(1)(B)(i). M.G. testified that about three weeks later when she and DeLeon were talking in her mom's bedroom, DeLeon pulled down his pajama pants and told M.G. to touch his penis. She did quickly, but he grabbed her hand, put his hand over hers, and moved their hands together up and down his penis for about five minutes. She said he made grunting noises, then something clear and gooey came out of the top of his penis. This testimony is sufficient to support a finding of indecency with a child by contact. *See id.* § 21.11(a)(1). The child testified that the second incident occurred more than thirty days after the first, and that the third incident occurred about three weeks after the second. Even if the testimony that the second incident occurred "about a month" after the first were insufficient to show the requisite period, the third incident occurred about a month and three weeks after the first—a

12

combination sufficient to support a finding of two incidents of sexual abuse of a child occurring over a period of at least thirty days. *See id.* § 21.02(b)(1).

DeLeon challenges M.G.'s credibility, pointing to inconsistencies in her statements at various times and to contrary testimony by others. He notes her failure to make an outcry before her mother confronted her with the recorded telephone conversation with DeLeon. He points out that she reported one incident, then three, then four, and that her reports varied with regard to how he touched her, whether his touch hurt, what time the offenses occurred, and where her brother was during these events. He notes that she admitted liking to use sexual language, initiating the sexual theme into the telephone conversation, and being overly dramatic. DeLeon also points to his brother's testimony that DeLeon did not share a bed with her when she stayed at their home and that the bedrooms at that house have no doors. The jury, however, could have either rejected that testimony or found that the offense simply occurred in a short period during which DeLeon's brother was not monitoring him. The jury was faced with a credibility choice and selected M.G. The record is not such that we can intrude on the jury's role and override its choice to credit M.G.'s testimony. *See Clayton*, 235 S.W.3d at 778; *Jones v. State*, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996). We find the evidence sufficient to support the conviction.

**The court did not abuse its discretion by denying DeLeon's motion for mistrial during the State's argument at the punishment phase.**

Permissible jury argument includes summation of the evidence, reasonable deduction from the evidence, answer to argument of opposing counsel, and plea for law enforcement. *Allridge v. State*, 762 S.W.2d 146, 155 (Tex. Crim. App. 1988). Commenting on an accused's failure to testify violates his state and federal constitutional privileges against self-incrimination.

13

*Archie v. State*, 340 S.W.3d 734, 738 (Tex. Crim. App. 2011). A defendant's Fifth Amendment privilege against self-incrimination continues during the punishment phase of trial. *See Mitchell v. United States*, 526 U.S. 314, 325-27 (1999); *Carroll v. State*, 42 S.W.3d 129, 131-32 (Tex. Crim. App. 2001).

We can reverse a trial court's denial of a motion for mistrial only for an abuse of discretion. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). To determine whether the court's instruction cured the prejudicial effect of the improper comment, we balance three factors: (1) the severity of the misconduct's prejudicial effect, (2) any curative measures, and (3) the likelihood of the same punishment being assessed absent the misconduct. *Hawkins v. State*, 135 S.W.3d 72, 75 (Tex. Crim. App. 2004). Mistrial is the appropriate remedy when the objectionable events are so emotionally inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant. *Archie*, 340 S.W.3d at 739. Only in extreme circumstances where the prejudice is incurable will a mistrial be required. *Hawkins*, 135 S.W.3d at 77. Where a comment leads to two plausible inferences—one of which is permissible—we do not presume that the jury would necessarily choose the improper inference. *See Henson v. State*, 683 S.W.2d 702, 704-05 (Tex. Crim. App. 1984). A comment on the defendant's failure to show remorse is generally not proper if the defendant testifies at the guilt stage and presents some defense, but does not testify at the punishment phase. *Randolph v. State*, 353 S.W.3d 887, 892 (Tex. Crim. App. 2011). The prosecutor may during the punishment phase comment on any testimony given by the defendant in the guilt/innocence phase and, if the defendant expressly or impliedly denies criminal responsibility during that testimony, the prosecutor may comment on that denial. *Id.* at 895. A statement during punishment argument that the defendant failed to express

14

remorse might be taken as a comment on his failure to testify, but any harm from that violation can be cured by an instruction to disregard the comment. *Moore v. State*, 999 S.W.2d 385, 405-06 (Tex. Crim. App. 1999).

DeLeon contends that the trial court should have granted his motion for mistrial after the State commented on his exercise of his right to remain silent during the sentencing phase of trial. DeLeon testified during the guilt/innocence phase and denied committing the offense but did not take the stand during the punishment phase. The controversy centers on the following exchange during the State's punishment argument:

> [Prosecutor]: . . . . And it's scary the way that he conducted himself, the absolute denial with what he showed, and then the complete support of his family behind him. I do not believe 25 years, as a punishment, is appropriate in this case. I believe a sentence of 60 years would be appropriate. [M.G.] is going to have to live with this for the rest of her life.
>
> And if the Defendant had taken the stand, admitted what he had done, and begged for forgiveness, I believe the minimum sentence would be appropriate. But that's not what we have here.
>
> [Defense counsel]: Your honor, could we approach the bench?
>
> (Bench Conference)

> ### DEFENSE MOTION FOR MISTRIAL

> [Defense counsel]: I am going to ask for a mistrial. He did not testify at punishment. He just said to the jury, if he got up on the stand at this phase and told you—
>
> [Prosecutorl]: I was specifically referring to guilt/innocence.
>
> [Defense counsel]: He didn't say that. He said, if he got up here and asked for forgiveness—this—I'm asking for a mistrial, Judge.

15

<u>COURT'S RULING</u>

The Court: Well, you're not going to get one. I am going to instruct the jury to disregard that.

[Defense counsel]: That's unbelievable.

(Open Court.)

The Court: Ladies and gentlemen, the last comment by the prosecutor is improper, and you will not consider that for any purpose whatsoever.

The court then expressly denied the motion for mistrial.

As the trial court found, the argument was improper. The prosecutor's comment violated DeLeon's right not to testify. *See Randolph*, 353 S.W.3d at 891. Even if the statement that DeLeon did not take the stand and admit what he had done referred to DeLeon's testimony at guilt/innocence during which he denied wrongdoing, the statement that he did not beg for forgiveness is equivalent to the failure to express remorse found to be an improper comment by the court of criminal appeals. *See Swallow v. State*, 829 S.W.2d 223, 226 (Tex. Crim. App. 1992), *overruled in part by Randolph*, 353 S.W.3d at 894-95 (distinguishing between prosecutorial argument that defendant did not accept responsibility—a proper summation of the defendant's guilt/innocence testimony denying committing the crime—from argument that defendant did not express remorse—an improper comment on the failure to testify at punishment).

We conclude, however, that the trial court's prompt, thorough, and proper instruction to the jury to entirely disregard the prosecutor's argument cured the harm. DeLeon received a sentence of thirty-two years—seven years above the minimum of twenty-five years permitted for the offense of continuous sexual abuse of a child, but well below the maximum life sentence permitted. *See* Tex. Penal Code § 21.02(h). Considering that the sexual abuse of the child found by the jury

16

was committed by an elementary school teacher—one entrusted with the safety and well-being of children—we are confident that the jury was not inflamed by the improper comment and very likely would have assessed the same punishment absent the misconduct. *Hawkins*, 135 S.W.3d at 77. The trial court did not abuse its discretion by denying the motion for mistrial.

**The sentence did not violate the constitution.**

DeLeon contends that his punishment violates constitutional prohibitions against cruel and unusual punishment because it does not have a possibility of parole. *See* Tex. Penal Code § 21.02(h); *see also* Tex. Gov't Code § 508.145(a). He notes that his minimum possible sentence was twenty-five years in prison, while someone who murders a child could get as few as five years in prison with a possibility of parole. *See* Tex. Penal Code § 12.32; Tex. Gov't Code § 508.145(f). He contends that, because a child murderer sentenced to thirty-two years in prison would be eligible for parole but he would not, his sentence is disproportionate to his crime. He contends that, in assessing whether this categorical denial of parole to persons guilty of continuous child sexual abuse is cruel and unusual, we should examine four factors: (1) whether there is a national consensus against imposing the particular punishment at issue; (2) the moral culpability of the offenders at issue in light of their crimes and characteristics; (3) the severity of the punishment; and (4) whether the punishment serves legitimate penological goals. *Meadoux v. State*, 325 S.W.3d 189, 194 (Tex. Crim. App. 2010). He contends that murder is a worse crime than sexual abuse and that Texas's sentencing parameters are inconsistent with that hierarchy. He contends that the sentence is severe because he will be incarcerated until he is in his late sixties.

The State leans on the conclusion by the Amarillo court that the punishment structure for continuous sexual abuse of a child is constitutional, even when a person about forty years

17

of age is sentenced to a sixty-year prison term without the possibility of parole. *Glover v. State*, 406 S.W.3d 343, 346-50 (Tex. App.—Amarillo 2013, pet. ref'd). The Amarillo court found a national consensus in favor of the constitutionality of the sentencing range for this offense, primarily based on the request by a judge on the Court of Criminal Appeals that the legislature enact tougher punishment on those who commit continuous sexual assaults of children. *See id.* at 348 (citing *Dixon v. State*, 201 S.W.3d 731, 737 (Tex. Crim. App. 2006) (Cochran, J., concurring)). The Amarillo court wrote that—despite court holdings that murder is a more serious offense than child sexual assault—the nature of the offense, its repetitive nature, and the vulnerability of child victims combined to make the moral culpability of the offenders weigh in favor of the no-parole punishment being constitutional. *Glover*, 406 S.W.3d at 348-49. The Amarillo court opined that the severity of imprisonment for sixty years (in that case) without the possibility of parole weighed against the constitutionality of the statute. *Id.* at 349. Finally, the Amarillo court opined that the mere fact that the sentencing range for this offense is greater than that for child murder does not necessarily render the sentencing range unconstitutional. *Id.* That court reasoned that those convicted of the crime are already recidivists and opined that they are more likely to reoffend than murderers who, aside from serial killers, tend not to reoffend. *Id.* at 349-50. The court held that the prison term without parole served the penological goals of retribution, deterrence, and incapacitation. *Id.*

DeLeon has presented no evidence or argument that requires rejection of the *Glover* opinion. The sentence imposed in this case—thirty-two years in prison—is substantially less than the sixty-year prison term imposed on a similarly aged defendant in that case and found to be constitutional. *See id.* at 345. We are not persuaded that the mere fact that a child sexual abuser might be sentenced to a longer prison term than a child murderer necessarily renders the sentencing

18

structure unconstitutional. Assuming that criminal behavior is affected by the punishment ranges enshrined in law, we are somewhat concerned by the "incentive" inherent in a sentencing structure that mandates a minimum sentence for a person who improperly sexually touches a child twice that is five times longer than the five-year minimum sentence available for a person who murders that same child, but we are not persuaded that our concern is sufficient to render the statutes or DeLeon's sentence unconstitutional.

## CONCLUSION

Finding that DeLeon has presented no reversible error, we affirm the judgment.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Pemberton and Bourland

Affirmed

Filed: May 29, 2015

Do Not Publish

19