

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-11-00392-CR
_____

ROY GLOVER, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 47th District Court
Potter County, Texas
Trial Court No. 62,756-A, Honorable Dan Schaap, Presiding

June 27, 2013

OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Following a plea of not guilty, Appellant, Roy Glover, was convicted by a jury of continuous sexual abuse of a child younger than fourteen years of age.[1] He was sentenced to sixty years confinement without the possibility of parole.[2] In attacking his

---

[1]See TEX. PENAL CODE ANN. § 21.02(b) (WEST SUPP. 2012).

[2]See TEX. GOV'T CODE ANN. § 508.145(a) (WEST 2012) (providing that "[a]n inmate . . . serving a sentence for an offense under Section 21.02, Penal Code, . . . is not eligible for release on parole").

sentence, Appellant presents two issues: (1) does the Eighth Amendment *categorically* bar a sentence for continuous sexual abuse of a child where there is no possibility for parole, and (2) for victims of child sexual assault who themselves commit sexual assault offenses on children, does the Eighth Amendment prohibit imposition of a life sentence with no realistic opportunity to obtain release before the end of that term, in the same way the Eighth Amendment prohibits such a sentence for juvenile offenders who did not commit homicide?  We affirm.

## BACKGROUND

Appellant does not contest the legal sufficiency of the evidence to support his conviction.  He merely requests a new sentencing hearing.  Thus, only the facts necessary for disposition of his issues will be discussed.

Appellant, thirty-seven years old at the time pretrial proceedings commenced in March 2011, sexually assaulted his daughter from the time she was ten years old until she was thirteen.  Eventually, she confided in her friends who in turn confided in their school counselor.  She later made an outcry of the abuse to her counselor.  The evidence showed that Appellant threatened to kill her, held a knife to her throat, and threatened to kill everyone in the house while they slept if she ever reported the abuse. The victim testified she was sexually assaulted too many times to keep count.

During the punishment phase of the trial, Appellant waived his right to keep his medical information confidential and his doctor, Dr. Steven Schneider, a psychologist,

2

testified on his behalf.[3]  According to Dr. Schneider, Appellant's father was a "very strict" disciplinarian, to the point of being abusive.  Additionally, Appellant was sexually abused by his mother from the time he was three until about age six or seven.  His parents eventually divorced and he was raised by his mother.

Although of normal intelligence, Appellant did not have any academic assistance at home and he dropped out of school in ninth grade.  He grew up in a very dysfunctional family and during his adolescence, associated with much older individuals, while at the same time he engaged in drug use and drug trafficking.  He was also treated for suicidal threats when he was younger.  Dr. Schneider concluded his direct examination by testifying that he diagnosed Appellant with incestuous pedophilia, depression and adjustment issues.  His testimony described Appellant as a "polysubstance abuser" and summarized his overall life experience as a "sad situation."

During cross-examination by the State, Dr. Schneider acknowledged that Appellant had an awareness of his conduct and demonstrated a pattern of offending against his daughter, then apologizing for his behavior.  He opined that Appellant's minimal emotional connection with others would present an obstacle to treatment for pedophilia.

## ANALYSIS

By his first issue, Appellant questions whether the Eighth Amendment *categorically* bars his sixty year sentence for continuous sexual abuse of a child where

---

[3]Dr. Schneider explained that in his analysis of a patient, information provided by the patient is meant to be self-serving and he takes that into account in his evaluation.

there is no possibility for parole. Essentially, he contends the legislatively adopted sentencing scheme violates the Eighth Amendment because his sentence, considering the unavailability of parole, is a more severe sentence than a similar sentence would be if he had murdered the victim instead of sexually abusing her. He reasons that because parole is available to someone convicted of murder of a child, and because the United States Supreme Court has declared that murder is a more outrageous offense than sexual assault, the lack of any possibility of parole in the continuous sexual assault sentencing scheme amounts to cruel and unusual punishment. By his second issue, he urges that victims of sexual abuse who themselves become sexual abusers should be accorded the same status as juveniles who cannot be assessed a sentence which denies them any reasonable expectation of release during their lifetime. We will address Appellant's two issues separately because we answer Appellant's first issue in the negative and we find his second issue does not present a justiciable controversy,

## EIGHTH AMENDMENT

Appellant contends that the unavailability of parole for the offense of continuous sexual assault of a child violates the Eighth Amendment's prohibition against cruel and unusual punishment because it *categorically* denies parole eligibility to an entire class of offenders – to wit: persons who have committed the offense of continuous sexual assault. Relying on *Graham v. Florida*, 560 U.S. __, 130 S.Ct. 2011, 2021, 176 L.Ed.2d 825 (2010), Appellant reasons that because the United States Supreme Court has previously determined that sexual assault "does not compare to murder," *Coker v. Georgia*, 433 U.S. 584, 592, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977), the categorical denial of parole eligibility "to an entire class of offenders" in the non-homicide case of

4

continuous sexual assault of a child is disproportionate to any similar sentence that could be imposed for the more serious homicide offense of murder of a child, where the offender would be eligible for parole.[4]

Continuous sexual abuse of a child is a first degree felony with a special range of punishment of imprisonment for life, or for any term of not more than 99 years or less than 25 years.  TEX. PENAL CODE ANN. § 21.02(h) (WEST SUPP. 2012).  A person serving a sentence for that offense is not eligible for release on parole.  TEX. GOV'T CODE ANN. § 508.145(a) (WEST 2012).  By contrast, the murder of a child is a first degree felony with a range of punishment of imprisonment for life or for any term of not more than 99 years or less than 5 years, and by a fine not to exceed $10,000.  TEX. PENAL CODE ANN. § 12.32 (WEST 2011).  A person serving a sentence for murder is eligible for release on parole.  TEX. GOV'T CODE ANN. § 508.145(f) (WEST 2012).

Appellant reasons that because someone convicted of murder of a child could receive a sentence of sixty years with the possibility of parole, the imposition of his sentence of sixty years without the possibility of parole is disproportionate to his crime. We disagree with Appellant's argument.

The Eighth Amendment to the United States Constitution provides, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. CONST. amend VIII.  That provision is applicable to the States through the Fourteenth Amendment.  *Furman v. Georgia*, 408 U.S. 238, 239, 33

---

[4]Appellant does recognize in his argument that the murder of a child under 10 years of age can be a capital offense, thereby rendering parole unavailable.  TEX. PENAL CODE ANN. § 19.03(a)(8) (WEST SUPP. 2012) and TEX. GOV'T CODE ANN. § 508.145(a) (WEST 2012).  Here, the victim contends that the continuous sexual assault occurred when she was between ten and thirteen years of age.

L.Ed.2d 346, 92 S.Ct. 2726 (1972) (*per curiam*). The prohibition of cruel and unusual punishment "guarantees individuals the right not to be subjected to excessive sanctions." *Miller v. Alabama*, 567 U.S. __, 132 S.Ct. 2455, 2463, 183 L.Ed.2d 407 (2012) (citing *Roper v. Simmons*, 543 U.S. 551, 560, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005)). The right to be free from excessive punishment flows from the basic "precept of justice that punishment for crime should be graduated and proportioned" to both the offender and the offense. *Roper*, 543 U.S. at 560 (quoting *Atkins v. Virginia*, 536 U.S. 304, 311, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002)).

The constitutionality of a given punishment scheme cannot, however, be determined by simply comparing the punishment schemes applicable to two or more offenses for purposes of making a "proportionality review." In fact, the United States Supreme Court has held that the Eighth Amendment does not contain a proportionality guarantee in non-death penalty cases. *See Harmelin v. Michigan*, 501 U.S. 957, 965, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (upholding mandatory sentence of life without the possibility of parole in a drug possession case). In *Harmerlin*, the Supreme Court found that while mandatory penalties may be both severe and cruel, they certainly are not unusual in a constitutional sense. Accordingly, a sentence for a non-capital offense which is subject to a mandatory provision providing for the unavailability of parole is not *per se* unconstitutional.

A narrow proportionality principle applicable to non-capital cases has, however, evolved as it pertains to the "categorical" application of a punishment scheme to "an entire class of offenders." In *Graham*, the United States Supreme Court held that a

6

sentence of life without the possibility of parole is constitutionally infirm when categorically applied to juveniles in non-homicide offenses.

When analyzing similar "categorical" challenges to statutory punishment schemes in Texas, the Court of Criminal Appeals has interpreted *Graham* as requiring the consideration of four factors: (1) whether there is a national consensus against imposing the particular punishment at issue; (2) the moral culpability of the offenders at issue in light of their crimes and characteristics; (3) the severity of the punishment; and (4) whether the punishment serves legitimate penological goals. *Meadoux v. State*, 325 S.W.3d 189, 194 (Tex.Crim.App. 2010) (relying upon *Graham v. Florida*, 130 S.Ct. at 2022 & 2026).

I. NATIONAL CONSENSUS

The best evidence of a national consensus with respect to the appropriateness of the punishment assessed for a particular offense is the legislation enacted by the nation's legislatures. *Meadoux*, 325 S.W.3d at 194 (citing *Atkins*, 536 U.S. at 312). "Actual sentencing practices are an important part of the Court's inquiry into consensus." *Graham*, 130 S.Ct. at 2023.

In *Dixon v. State*, 201 S.W.3d 731 (Tex.Crim.App. 2006), Judge Cochran, in her concurring opinion, implored the Texas Legislature to enact a new penal statute that focused on a continuing course of conduct involved in a sexually abusive relationship between a young child and a trusted authority figure. It was a call to action to accommodate the "prosecution of generic, undifferentiated, ongoing acts of sexual abuse of young children" in a penal system intended to prosecute a person who

7

commits "one discrete criminal offense at one discrete moment in time." *Id.* at 737. She noted, "[t]his scenario plays itself out in Texas courtrooms every day." The national consensus, as reflected by the Legislature's response to this call for legislation to address the continuous sexual abuse of a child, resulted in enactment of section 21.02 of the Penal Code and amendment to the "no parole" provision contained in section 508.145(a) of the Texas Government Code.[5] Therefore, we believe the national consensus factor weighs in favor of the constitutionality of a no parole sentencing scheme for the offense of continuous sexual abuse of a child.

## II. MORAL CULPABILITY

Regarding moral culpability, *Graham* recognized that there is a moral line between murder and other serious violent offenses against an individual. 130 S.Ct. at 2027. Defendants who kill are categorically more deserving of the most serious forms of punishment than are defendants who do not kill, intend to kill or foresee that life will be taken. *Id.* *Graham* involved a juvenile who was charged as an adult in an armed robbery that did not result in a homicide. The Court recognized that a juvenile's transgression "is not as morally reprehensible as that of an adult" because a juvenile lacks maturity and has an underdeveloped sense of responsibility. 130 S.Ct. at 2026. Similarly, in *Atkins*, the Supreme Court concluded that, in light of "evolving standards of decency," the death penalty was cruel and unusual punishment for mentally challenged defendants because their disabilities prevented them from acting with the level of moral culpability that characterizes the most serious adult criminal conduct. 536 U.S. at 321.

---

[5]*See* Act of May 18, 2007, 80th Leg., R.S., ch. 593, § 1.17, 2007 Tex. Gen. Laws 1120, 1127. *See also* Act of May 18, 2007, 80th Leg., R.S., ch. 593, § 1.10, 2007 Tex. Gen. Laws 1120, 1124.

Likewise, imposition of the death penalty for rape has been found to be unconstitutional. In *Coker*, the Supreme Court recognized that rape of an adult woman is "without a doubt deserving of serious punishment; but in terms of moral depravity and of the injury to the person and to the public, it does not compare with murder . . . ."[6] 433 U.S. at 598. More than three decades later, the Supreme Court held in *Kennedy v. Louisiana*, 554 U.S. 407, 421, 128 S.Ct. 2641, 171 L.Ed.2d 525 (2008), that the Eighth Amendment barred imposition of the death penalty for the rape of a child where the crime did not result, and was not intended to result, in the death of the child.

While the national consensus is that the death penalty is not appropriate for a sexually related non-homicide offense; the mere fact that a sentence may be subject to no possibility of parole does not offend the Eighth Amendment. *See Harmelin*, 501 U.S. at 994-96. *See also Duran v. State*, 363 S.W.3d 719, 722-23 (Tex.App.—Houston [1st Dist.] 2011, pet. ref'd). Accordingly, considering the nature of the offense, the vulnerability of the victims, and the repetitive nature of the offense, we believe the moral culpability factor weighs in favor of the constitutionality of a no parole sentencing scheme for the offense of continuous sexual abuse of a child.

---

[6]The Court wrote:

> [w]e do not discount the seriousness of rape as a crime. It is highly reprehensible, both in a moral sense and in its almost total contempt for the personal integrity and autonomy of the female victim . . . . Short of homicide, it is the "ultimate violation of self." It is also a violent crime . . . .

*Coker*, 433 U.S. at 597.

9

III. SEVERITY OF THE PUNISHMENT

A lengthy term of years without the possibility of parole is a severe penalty.[7]  In this case, Appellant contends that his sentence is made even more severe by the fact that his sentence is "in all probability" a life sentence.  Regardless of whether his sentence is equivalent to a sentence of life without the possibility of parole, the sentence in question is certainly a severe sentence, arguably weighing in favor of the unconstitutionality of this particular sentencing scheme as applied to Appellant.

IV. PENOLOGICAL GOALS

Four legitimate goals of penal sanctions are retribution, deterrence, incapacitation and rehabilitation.  *Ewing v. California*, 538 U.S. 11, 25, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003).  "A sentence lacking any legitimate penological justification is by its nature disproportionate to the offense."  *Graham*, 130 S.Ct. at 2028.

In part, section 21.02 of the Texas Penal Code was enacted to protect children from continuous acts of sexual abuse.  As an analogy, a recidivist statute such as section 12.42 of the Texas Penal Code is intended to hold a perpetrator accountable for continuously breaking the law.  *See Simpson v. State*, 668 S.W.2d 915, 919 (Tex.App.—Houston [1st Dist.] 1984, no pet.).  Recidivist statutes were enacted to protect citizens against habitual offenders.  *Id.*  Similarly, the Legislature's decision to deny parole to persons convicted of continuous sexual abuse of a child protects child victims against continuous sexual attacks.  A punishment scheme does not offend the

---

[7]The most severe and unique punishment is death, the second most severe is life imprisonment without the possibility of parole and life imprisonment with the possibility of parole is the third most severe form of punishment.  *Harmelin*, 501 U.S. at 996.

10

Eighth Amendment simply because "the classification is not made with mathematical nicety or because in practice it results in some inequality." *Martin v. State*, 335 S.W.3d 867, 879 (Tex.App.—Austin 2011, pet. ref'd) (citing *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970)).

As a general rule, murder results from a single, impulsive act, and except for serial killers, murderers tend not to reoffend. On the other hand, pedophiles and sexual predators tend to repeat their offenses. Accordingly, the penological interests of both deterrence and incapacitation are served by the sentencing scheme in question.

Having weighed all four factors, we cannot say that a sentencing scheme which categorically denies that availability of parole to offenders who have committed the offense of continuous sexual abuse is constitutionally infirm. Appellant's first issue is overruled.

## JUSTICIABLE CONTROVERSY

By his second issue, Appellant urges this Court to consider his abusive childhood under the same standards applied to juveniles of non-homicide offenses and hold that the Eighth Amendment prohibits a sentence of *life without parole* in a non-homicide case where the offender has been sexually abused. Essentially, Appellant asks this court to equate his status as an abused offender to that of a juvenile. *See generally Graham*, 130 S.Ct at 2034 (holding that the Eighth Amendment prohibits the imposition of a sentence of life without parole on a juvenile offender convicted of a non-homicide offense). We find that Appellant's claim does not present a justiciable controversy.

In order to address an issue on appeal, an appellate court must be presented with a justiciable controversy. A justiciable controversy is a real and substantial controversy which is appropriate for judicial determination, as distinguished from a dispute which is hypothetical or abstract in character. In that regard, courts generally lack judicial authority to answer abstract questions of law or to consider issues raised by persons who have not suffered the complained of injury. *Fuller v. State*, 829 S.W.2d 191, 201 (Tex.Crim.App. 1992). In *Fuller*, the Court of Criminal Appeals held that "it is a fundamental rule of law that only the person whose primary legal right has been breached may seek redress for an injury" and "[o]ne who has not suffered an invasion of a legal right does not have standing to bring suit." *Id.* at 201-202 (quoting *Nobles v. Marcus*, 533 S.W.2d 923, 927 (Tex. 1976) and *Sherry Lane Nat'l Bank v. Bank of Evergreen*, 715 S.W.2d 148, 152 (Tex.App.—Dallas 1986, writ ref'd n.r.e.) respectively). Consequently, the issue of standing has been considered to be a "constituent requirement of justiciability, the basic posture in which a controversy must appear to be cognizable by the courts." *Id.* at 201. Because a justiciable controversy does not exist where standing does not exist, judicial review is improper unless essential to the resolution of an actual case or controversy. *Id.*

Here, Appellant was not sentenced to life without parole. Because Appellant seeks to have this Court consider the constitutionality of a sentence he did not receive, we believe Appellant's second issue fails to present a justiciable controversy. Accordingly, Appellant's second issue is overruled.

**CONCLUSION**

Having overruled Appellant's issues, the trial court's judgment is affirmed.


Patrick A. Pirtle
Justice


Publish.