# Court of Appeals
## Tenth Appellate District of Texas

10-24-00276-CR

Milton Coster Hill,
Appellant

v.

The State of Texas,
Appellee

On appeal from the
369th District Court of Leon County, Texas
Judge Charles Michael Davis, presiding
Trial Court Cause No. 23-0042CR

JUSTICE SMITH delivered the opinion of the Court.

## MEMORANDUM OPINION

Milton Coster Hill was charged with ten counts of various acts of sexual

abuse against two different children, A.H. and S.H.  After a jury trial, Hill was

convicted of seven of the alleged counts and acquitted of three counts.[1]  In six

---

[1] In accordance with the jury verdicts, Hill was sentenced to serve forty-five years in prison on one count of continuous sexual abuse of a child, twenty years in prison with a $10,000 fine on one count of sexual assault of a child, seven years in prison with a $7,500 fine on one count of attempted sexual assault of a child, and ten years in prison with a $5,000 fine on each of four indecency with a child by contact convictions.  The trial court ordered the sentences to be served consecutively.

issues, Hill disputes the denial of his motion to recuse the trial judge, alleges a due-process violation based on actual bias of the trial judge, challenges the trial court's admission of certain evidence, and presents facial and as-applied constitutional challenges to the continuous sexual abuse statute as volitive of his rights to a unanimous jury verdict and to be free from cruel and unusual punishment. We affirm.

## Recusal Motion

In his first issue, Hill argues that the Honorable Alfonso Charles, Presiding Judge of the Tenth Administrative Judicial Region, abused his discretion in denying Hill's pre-trial motion to recuse the Honorable Judge Charles Michael Davis, former District Judge of the 369th Judicial District Court of Leon County, from presiding over this case. We disagree.

STANDARD OF REVIEW AND RELEVANT LAW

The rules of civil procedure concerning the recusal of judges apply in criminal cases. *See Gaal v. State*, 332 S.W.3d 448, 452-53 (Tex. Crim. App. 2011). Relevant here, Rule 18b(b) provides that a judge must recuse himself in any proceeding in which "(1) the judge's impartiality might reasonably be questioned; [or] (2) the judge has a personal bias or prejudice concerning the subject matter or a party[.]" TEX. R. CIV. P. 18b(b)(1), (2).

We review a denial of a motion to recuse for an abuse of discretion. *See Gaal*, 332 S.W.3d at 455.

RELEVANT FACTS

Hill's pre-trial motion to recuse Judge Davis under Rule 18b(b)(1) and (2) alleged that Judge Davis harbored a personal bias against Hill, improperly inserted himself into the plea-bargaining process, and demonstrated that he was unable to consider the full range of punishment. Judge Charles held a hearing on the motion, at which one of Hill's trial attorneys and Hill's wife testified.

The basic facts are largely undisputed. The recusal motion stems from two specific incidents. First, a few months prior to the recusal motion being filed, Hill's wife attended an unrelated criminal trial in Judge Davis's courtroom. Judge Davis banned Hill's wife from the proceedings after she violated a policy prohibiting notetaking in the courtroom. The second incident concerns the parties' plea negotiations a few days before trial was scheduled to begin. The State and defense counsel contacted Judge Davis via conference call to discuss a proposed plea agreement to resolve the case. Judge Davis informed the parties that he would not accept the proposed plea agreement. The parties continued to negotiate and reached a second tentative plea agreement. Via conference call, Judge Davis informed the parties that he

would not accept the second proposed agreement.  Defense counsel then asked Judge Davis what terms he would accept, and Judge Davis informed the parties of a plea bargain agreement that he would be comfortable with.[2]  Later that day, Judge Davis sent an *ex parte* text message to the District Attorney asking whether any agreement had been reached.  The District Attorney informed Judge Davis that no agreement was reached and then informed defense counsel of the *ex parte* communication.

After the hearing, Judge Charles denied the recusal motion.  In explaining his decision, Judge Charles stated that the allegations regarding Mrs. Hill were insufficient to justify recusal and that the *ex parte* communication with the District Attorney was merely a request for a status update for scheduling purposes.  As to Judge Davis's involvement in the plea negotiations, Judge Charles considered that defense counsel specifically asked Judge Davis to inform the parties what plea bargain terms he would accept.  Judge Charles also compared the facts of this case to *Gaal* and *Free v. State*, No. 08-11-00024-CR, 2012 WL 651638, at *1-3 (Tex. App.—El Paso Feb. 29, 2012, no pet.) (mem. op., not designated for publication), and determined that Judge Davis's conduct, while not advisable, qualified as permissibly advising the parties of whether he would accept or reject a plea agreement.

---

[2] The parties agree that the plea bargain would require Hill to serve ten years in prison followed by ten years of deferred adjudication community supervision.

ANALYSIS

Regarding Judge Davis's conduct toward Mrs. Hill at the unrelated criminal proceeding, ordinary efforts at courtroom administration do not render a trial judge subject to recusal.  *See Gaal*, 332 S.W.3d at 454.  Nothing in Mrs. Hill's testimony indicated that Judge Davis was aware of her affiliation with any pending case in his courtroom at the time he banned her for violating his policy on notetaking.[3]  Though, according to Hill's trial attorney, Judge Davis brought up this incident several months later, Judge Charles did not abuse his discretion in determining that this did not demonstrate impartiality or bias warranting recusal.

We also find that Judge Charles did not abuse his discretion in determining that Judge Davis's plea-related statements were insufficient to require recusal.  On appeal, Hill attempts to distinguish this case from the cases cited by Judge Charles in support of his decision.  A brief discussion of those cases is warranted.

In *Gaal*, the unanimous Court of Criminal Appeals upheld a decision to deny a recusal motion where the trial court refused to accept any plea bargain agreement unless the plea bargain was for the maximum sentence.  *See id.* at 449, 460.  The Court pointed out that "the trial judge in this case gave no

---

[3] Mrs. Hill testified that Judge Davis referred to her as "[t]he woman taking notes[.]"

indication as to what sentence he would or would not impose at a punishment hearing. He stated only that he would not accept a *plea bargain* unless for the maximum term of ten years." *Id.* at 457.

In *Free*, the El Paso Court of Appeals upheld the denial of a recusal motion alleging that the trial judge demonstrated a personal bias against the defendant for refusing to accept a plea agreement. *Free*, 2012 WL 651638, at *2-3. The defendant was indicted in count one on a second-degree felony drug charge and in count two on a third-degree felony drug charge. *Id.* at *1. Enhancement paragraphs for the offenses of aggravated sexual assault of a child, felony theft, and forgery, elevated the punishment range on each charge to a minimum of twenty-five years in prison. *Id.* The trial court rejected the parties' proposed plea agreement in which the State would dismiss count one in exchange for Free's guilty plea to count two with a punishment recommendation of twenty years in prison. *Id.* The El Paso Court of Appeals, discussing the charges and enhancements before the trial court, reiterated that "absent other evidence, a trial judge's rejection of a plea agreement is not sufficient evidence of bias or partiality to necessitate recusal." *Id.* at *3.

Here, as in *Gaal*, Judge Davis's statements were made in the context of advising the parties whether he would accept or reject certain plea agreements, not whether he could consider the full range of punishment if asked to assess

punishment.  Hill admits as much on appeal, stating that Judge Davis "stated unequivocally that he was unwilling to consider any *agreement* that would permit [Hill's] release from prison before he served ten years."  (emphasis added).  Additionally, here, as in *Free*, Judge Davis's refusal to accept certain plea agreements was informed by the charges before him.  Hill faced ten felony charges alleging various sexual offenses against two different complainants over the course of many years.  One such offense carried a minimum punishment of twenty-five years in prison without the possibility of parole. The parties agree that they also provided Judge Davis with a limited rendition of the facts of the case in their discussions.  Considering the information before Judge Davis, we cannot say that his plea agreement parameters evidence a bias or prejudice against Hill such that his impartiality might reasonably be questioned.  A trial judge has discretion to reject any particular plea agreement or all plea agreements.  *Rhodes v. State*, 357 S.W.3d 796, 800 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

Finally, while we are certainly mindful that trial judges should "avoid the appearance of any judicial coercion or prejudgment of the defendant" by participating in plea discussions, we disagree with Hill's characterization that Judge Davis "injected himself" into the plea negotiations.  *See Perkins v. Court of Appeals for Third Supreme Judicial Dist.*, 738 S.W.2d 276, 282 (Tex. Crim.

App. 1987).  Of particular import to Judge Charles on this matter was that Judge Davis's plea parameters were set at the express request of defense counsel.  During defense counsel's closing argument, Judge Charles asked,

> When you put the Judge in that position, *Judge, what's it going to take*, how then is it fair to come back and say *oh, well, now the Judge entered - - gave us an answer that we asked for* […] if that's grounds for recusal, isn't that basically setting the judge up?

Judge Charles determined that while "probably the safest thing for Judge Davis […] was to say nothing," recusal was not warranted on this basis.

Considering all of the foregoing, we find that Judge Charles's denial of Hill's motion to recuse Judge Davis was within the zone of reasonable disagreement.  Hill's first issue is overruled.

## Actual Bias

In his second issue, Hill contends that Judge Davis violated his constitutional right to a trial before a fair and impartial judge by harboring an actual bias against him, as demonstrated by Judge Davis's comments and conduct toward Hill and his supporters during trial.  *See* U.S. CONST. AMEND. V, XIV; TEX. CONST. art. I, § 19.

STANDARD OF REVIEW AND RELEVANT LAW

Due process guarantees an absence of actual bias on the part of a judge. *Ex parte Halprin*, 708 S.W.3d 1, 3-4 (Tex. Crim. App. 2024).  The party claiming the due process violation must demonstrate such a "high degree of favoritism

or antagonism as to make fair judgment impossible." *Liteky v. U.S.*, 510 U.S. 540, 555 (1994). When a claim of judicial bias is raised, we review the entire record to determine whether the judge's bias denied the defendant due process. *See Riggins v. State*, 714 S.W.3d 74, 90 (Tex. App.—Houston [1st Dist.] 2023, pet. ref'd).

RELEVANT FACTS

Hill argues that Judge Davis demonstrated actual bias during trial in three ways: (1) by questioning two spectators who attended trial in support of the Hill family, holding them in contempt and ordering them to pay a fine, and banning them from the remainder of the trial proceedings; (2) by "repeatedly chastis[ing]" Hill for "perceived infractions of decorum" during trial; and (3) through his remarks to Hill before sentencing.[4]

Spectators

Before beginning the first full day of testimony, Judge Davis noticed "two new faces that are here in the courtroom today." He inquired as to the spectators' names and affiliation with the case. Marie Posey and Jennifer Malone each identified themselves and stated they were friends of the Hill family. Judge Davis then admonished them:

---

[4] Hill also notes that prior to trial, Judge Davis "had already shown that he was unwilling to consider the full range of punishment, he had interfered with the plea bargain process, and he had expressed open hostility toward Mr. Hill's wife at an unrelated court hearing." Based on our analysis and resolution of these arguments in Hill's first issue, we do not address them again here.

All right. Your cell phones are going to be turned off. You may hear things you don't like or might be disturbing to you, I don't know. If that's the case, you better not do anything in this courtroom that draws the attention of that jury when that jury is sitting in here. Do you understand? […] Sitting in my courtroom is a privilege, and if you disrupt it or do anything of that nature, I'll first have you removed, and I'll take it under advisement whether or not I'll put [you] in contempt. Do you understand?

Posey and Malone each voiced their understanding.

Despite this admonishment, Malone's cell phone went off during trial. Outside of the jury's presence, Judge Davis called Malone up to the bench. In addition to discussing the cell phone disruption, he questioned Malone about whether she had communicated with any of the witnesses in the case. Malone admitted to one communication with Mrs. Hill, in which Mrs. Hill asked how Mr. Hill was doing. Malone gave consent to search her phone, which was searched in her presence by an investigator who was in the courtroom. The investigator located the text message conversation with Mrs. Hill in which Mrs. Hill acknowledged that she "can't risk them thinking you talked to me about testimony so I can – get to testify, per lawyer's request."[5] Judge Davis fined Malone $100 for not following the rules of the court and banned her from the courtroom for the remainder of the trial.

---

[5] Mrs. Hill had been placed under the Rule. *See* TEX. R. EVID. 614.

Judge Davis then called Posey to the bench and questioned whether she had "any communications with anybody involved in this case[.]" Posey denied any such communication. The investigator reviewed Posey's text messages and located a text conversation with Mrs. Hill discussing that a jury had been picked and when opening statements were scheduled to begin. The conversation also included Mrs. Hill requesting Posey to attend the trial for support, since Mrs. Hill could not be in the courtroom. Judge Davis fined Posey $500 and banned her from the courtroom for the rest of the trial.

Admonishing Hill

Judge Davis admonished Hill outside of the jury's presence on multiple occasions during trial.

The first instance occurred when Judge Davis warned Hill not to interact with the jury. Judge Davis stated, "You're staring at them as they're stepping out of the courtroom. Do not try to interact with them. Do you understand my instructions?"

The second instance occurred when, during a recess in the trial, the State's paralegal observed Hill walk over to the State's counsel table where he appeared to read one of the prosecutor's notes. After hearing sworn testimony from the paralegal, Judge Davis ordered Hill to be taken to the holding room during any future recesses in the trial.

The third instance occurred at a bench conference during Mrs. Hill's testimony. Judge Davis informed defense counsel that he noticed Hill "nodding his head and shaking it very gradually […] when you're asking a specific yes/no and she's pausing, and he's putting his head up and putting it down." He gave defense counsel an opportunity to discreetly correct Hill's conduct. Later on, however, two bailiffs in the courtroom notified Judge Davis that Hill was continuing to gesture during certain witness testimony. The two bailiffs gave sworn testimony outside of the jury's presence. Judge Davis learned that Hill winked at one of his children during her testimony and was "shaking his head yes or no" during some of his children's testimony. Given that this was his third admonishment about inappropriate courtroom behavior, Judge Davis indicated that he may admonish Hill in front of the jury should this behavior continue.

Sentencing

In support of his argument, Hill relies on the following remarks made by Judge Davis prior to pronouncing his sentence:

> But before I do pronounce sentence, Mr. Hill, I want to let you know, and I think you already know this, too, I see a lot of people come into this courtroom and sit in that chair that you sit in, all types, all walks of life, and everything. I don't know you well enough to know if it's arrogance, or pure narcissism that's on your part, but I can tell you I've never had an individual teach on the actual subject of the crime they are charged with, and then get convicted of that. Teaching about sex offense. Teaching sex

offenses to other college students. 2009, thinking you're so smart because you dodged a bullet, that you got away with it. And this whole -- this whole story about you're secretly this wonderful person when you're not drinking, that as an aside, that you just adopt people, and *we just take in all of these kids*. But it was nothing but a conveyor belt of victims to feed you in those unholy desires that you have. All right? It's not lost on me. This was never lost on the jury, either, throughout this whole process. I spent plenty of time back there talking to them. This was never lost on them. I want you to understand that.

So, what's going to happen here is you're not going to be able to victimize anybody else going forward, or in the future.

Judge Davis then pronounced Hill's sentences in accordance with the jury's verdicts and ordered the sentences served consecutively.

ANALYSIS

A trial court's inherent power to control the orderly proceedings in the courtroom includes restricting conduct or displays that might detract from an orderly, impartial trial focused on the issues to be tried and the legitimate evidence. *Alexander v. State*, 282 S.W.3d 143, 146 (Tex. App.—Texarkana 2009, pet. ref'd).

We agree with the State that Judge Davis's decision to fine Malone and Posey and ban them from the courtroom did not demonstrate an actual bias against Hill. Though Judge Davis was aware that both spectators were present at trial in support of Hill, his actions toward them were in response to a violation of a previous admonishment or direct untruthfulness in response to inquiries about communication with witnesses.

Further, Judge Davis made a thorough record of corroborating evidence supporting his correction of Hill's behavior in the courtroom. Each admonishment occurred outside of the jury's presence, and Judge Davis emphasized that he was "going to great lengths" to ensure Hill received a fair trial. Judge Davis explained to Hill some of the potential unintended negative consequences of Hill's behavior, such as the jury possibly perceiving his gestures as an inappropriate attempt to communicate with them. In other words, Judge Davis restricted Hill's conduct to ensure an impartial trial focused on the issues to be tried and the evidence.

Finally, while Judge Davis's pre-sentencing remarks might be "critical or disapproving of, or even hostile to" Hill, such comments do not support a bias challenge. *See Liteky*, 510 U.S. at 555. We find that Judge Davis's remarks fall within "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women [...] sometimes display." *Id.* at 555–56. Accordingly, we overrule Hill's second issue.

## Textbook Evidence

In his third issue, Hill contends that the trial court erred by permitting the State to cross-examine him with an excerpt from a textbook about the underreporting of offenses involving incest. We disagree.

STANDARD OF REVIEW AND RELEVANT LAW

Evidence is relevant if it tends to make a fact of consequence more or less probable. TEX. R. EVID. 401. "Evidence need not by itself prove or disprove a particular fact to be relevant; it is sufficient if the evidence provides a small nudge toward proving or disproving some fact of consequence." *Stewart v. State*, 129 S.W.3d 93, 96 (Tex. Crim. App. 2004).

We review a trial court's decision to admit evidence for an abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011).

ANALYSIS

Prior to his incarceration, Hill worked in various law enforcement roles and was also a collegiate criminal justice professor. At the time of his arrest, he was teaching a course on child sexual assault. On cross-examination, the State requested Hill to read a certain excerpt from a textbook that he used in teaching his class. Defense counsel objected to relevance, which the trial court overruled before granting a running objection. Hill read the following excerpt to the jury:

> Incest is a problem for the criminal justice system because it is a very underreported crime, even with respect to other sex crimes. Victims, especially child victims, have multiple reasons for not reporting incest offenses. The reasons for children not reporting incest revolve around the notion of fear. This can be a fear of retaliation, a fear that adults will not believe their accusations, or fear of the relative being removed from the home. As such, incest

is one of the least reported sex crimes likely masking a much higher incidence of occurrence.

The State also had Hill read a sentence from the textbook explaining that "[s]tudies of the percentage of false reports show they occur quite rarely."

On appeal, Hill claims that the textbook evidence should have been excluded under Rule 403 as being more prejudicial than probative. *See* TEX. R. EVID. 403. Trial counsel did not object under Rule 403. Because "an objection stating one legal basis may not be used to support a different legal theory on appeal," we address only Hill's preserved argument that the evidence was irrelevant. *Walker v. State*, 469 S.W.3d 204, 210–11 (Tex. App.—Tyler 2015, pet. ref'd).

Hill argues that "[g]eneralized observations about the reliability of outcries of sexual abuse" are irrelevant in determining whether he committed the alleged offenses. We disagree. This case involved delayed outcries alleging that a father sexually abused his children. One of the complainants reported the offense but later recanted, according to her trial testimony, due to fear that her siblings would be placed back into foster care and because her family did not believe her allegations. The other complainant did not officially report the abuse; rather, her therapist reported it after the complainant disclosed the abuse during therapy. Meanwhile, Hill's entire defensive theory was fabrication. He testified that he did not commit the alleged crimes and that

the complainants were being untruthful for unknown reasons. The textbook evidence was sufficiently tied to the facts of this case to assist the jury in resolving a factual issue. The trial court did not err in overruling Hill's relevance objection.

Accordingly, Hill's third issue on appeal is overruled.

**Out-of-Court Statements**

In his fourth issue, Hill challenges the trial court's admission of A.H.'s out-of-court statements to three different witnesses over his hearsay objections.[6] We find that the trial court did not reversibly err in admitting any of the complained-of statements.

STANDARD OF REVIEW

The erroneous admission of a hearsay statement is non-constitutional error that must be disregarded unless it affects a defendant's substantial rights. TEX. R. APP. P. 44.2(b); *Campos v. State*, 317 S.W.3d 768, 779 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). We will not overturn a criminal conviction for non-constitutional error if, after examining the record as a

---

[6] An issue is multifarious when it raises more than one specific complaint, and we are permitted to reject multifarious issues on that basis alone. *See Mays v. State*, 318 S.W.3d 368, 385 (Tex. Crim. App. 2010); *Wood v. State*, 18 S.W.3d 642, 649 n. 6 (Tex. Crim. App. 2000). As noted by the State, this issue is multifarious because it addresses the testimony of three different witnesses under two different exclusions from or exceptions to the rule against hearsay. *See* TEX. R. EVID. 801(e)(1)(B), 803(2). However, in the interest of justice, we will address each of Hill's arguments on appeal.

whole, we have fair assurance that the error did not influence the jury or influenced the jury only slightly. *Id.*

ANALYSIS

Three witnesses were permitted to testify to A.H.'s out-of-court statements under either the excited utterance exclusion from the hearsay rule or the prior consistent statement exception to the hearsay rule. *See* TEX. R. EVID. 801(e)(1)(B), 803(2). Regarding harm, Hill contends that the complained-of statements impermissibly bolstered A.H.'s credibility. A brief overview of the complained-of statements follows.

A.H.'s best friend from sixth grade testified that A.H. approached her in the girls bathroom at school on May 13, 2009, before classes began. She described A.H. as "freaking out," that A.H. was upset to a greater degree than the best friend had ever personally observed, and that it was obvious that A.H. had recently been crying. The best friend testified that A.H. said, "her dad kept trying to touch her" the night before. The best friend took A.H. to the front office.

One of the teachers at A.H.'s school was called to the front office to speak with A.H. As A.H. walked with the teacher to her classroom, A.H. began sobbing. The teacher asked A.H. if she was upset due to not making the cheerleading team last week. A.H. said no. The teacher asked what happened,

and A.H. said, "it happened again, he touched me […] he came in my room and touched me." In response to the teacher asking whether A.H. had told her mother, A.H. stated, "Yes […] I told her when it happened before, and she told me that if it happened again, she would get a divorce, but my mom is so happy right now." A.H. also told the teacher, "It went further last night than just touching." A.H. eventually recanted and her case was not prosecuted.

Several years later, when S.H.'s claims of sexual abuse were reported, the investigator who handled S.H.'s case discovered A.H.'s old case. The investigator interviewed A.H. in 2023 as part of his investigation. The State elicited testimony from the investigator that A.H.'s statements in 2023 of the various types of sexual abuse she endured were consistent with her advocacy center interview in 2009.

Assuming without deciding that the trial court erred in determining that A.H.'s statements to each of these witnesses were admissible under their relevant exclusion from, or exception to, the hearsay rule, we find that the error was harmless. The improper admission of evidence is harmless if the same or similar evidence is properly admitted elsewhere, or if the evidence comes in elsewhere without objection. *Estrada v. State*, 313 S.W.3d 274, 302 n. 29 (Tex. Crim. App. 2010). The jury heard the same or similar evidence from A.H. herself. She provided greater detail about the sexual abuse on the stand than

the generalized statements testified to by her best friend and her former teacher. The person who interviewed her at the advocacy center in 2009 also testified at trial about the details of A.H.'s outcry at that time. The jury was in the best position to judge A.H.'s credibility and compare the consistency of her statements, regardless of the complained-of testimony. After examining the record as a whole, we have fair assurance that the error, if any, did not influence the jury or had but a slight effect.

Accordingly, Hill's fourth issue is overruled.

## Constitutionality– Jury Unanimity

In his fifth issue, Hill asserts that the continuous sexual abuse statute is unconstitutional, both on its face and as applied to him in this case, because it does not require jury unanimity as to which specific acts of sexual abuse were committed by the accused. *See* TEX. PENAL CODE ANN. § 21.02. Hill acknowledges that this Court has previously considered this issue and determined that the statute does not violate the constitutional right to jury unanimity because "the individual acts of sexual abuse are the manner and means by which the element of 'two or more acts of sexual abuse' is committed, and not elements in and of themselves." *See Navarro v. State*, 535 S.W.3d 162, 166 (Tex. App.—Waco 2017, pet. ref'd). We decline Hill's invitation to reconsider our position on this issue.

Accordingly, Hill's fifth issue is overruled.

## Constitutionality - Punishment Scheme

In his final issue on appeal, Hill categorically challenges the punishment scheme applicable to the offense of continuous sexual abuse of a child on facial and as-applied constitutional grounds. Specifically, he argues that "the 25-year minimum sentence and unavailability of parole […] violates the Eighth Amendment's prohibition against cruel and unusual punishments because it categorically denies parole eligibility to an entire class of offenders." *See* U.S. CONST. AMEND. VIII.

In analyzing a categorical challenge, we balance the following factors: (1) whether there is a national consensus against imposing the punishment for the offense; (2) the moral culpability of the offenders at issue in light of their crimes and characteristics; (3) the severity of the punishment; and (4) whether the punishment serves legitimate penological goals. *See Meadoux v. State*, 325 S.W.3d 189, 193 (Tex. Crim. App. 2010). The appellant has the burden of demonstrating these factors. *Id.* at 194 n. 7.

In his brief, Hill discusses the severity of the punishment but fails to address the remaining three factors. He also acknowledges that several other appellate courts have addressed the constitutionality of this statute's punishment scheme and, having weighed all four factors, rejected his Eighth

Amendment argument. *See, e.g., Glover v. State*, 406 S.W.3d 343 (Tex. App.—Amarillo 2013, pet. ref'd); *Aguilar v. State*, No. 04-20-00056-CR, 2021 WL 2668834 (Tex. App.—San Antonio June 30, 2021, no pet.) (mem. op., not designated for publication); *McCain v. State*, 582 S.W.3d 332 (Tex. App.—Fort Worth 2018, no pet.); *DeLeon v. State*, No. 03-13-00202-CR, 2015 WL 3454101 (Tex. App.—San Antonio May 29, 2015, pet. ref'd) (mem. op., not designated for publication). Hill provides no evidence or analysis that persuades us to reject the reasoning in these opinions. We find that Hill has failed to meet his burden to demonstrate that the punishment scheme is unconstitutional. Accordingly, we overrule Hill's sixth issue.

## Conclusion

Having overruled all of Hill's issues on appeal, we affirm the judgments of the trial court.

---

STEVE SMITH
Justice

OPINION DELIVERED and FILED:  March 12, 2026

Before Chief Justice Johnson,
    Justice Smith, and
    Justice Harris
Affirmed
Do not publish
CRPM

